**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE, | |
| Plaintiff, | |
| v. | Case No. 1:16-cv-871 (CKK) |
| W. NEIL EGGLESTON, *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**DEFENDANTS' PARTIAL MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Background ............................................................................................................................. 3

    I.      Statutory Background. ........................................................................................ 3

    II.    Factual and Procedural History ......................................................................... 4

           A.     History of White House Consultation on Records Requested Under
                  the FOIA .................................................................................................. 4

           B.     The Instant Lawsuit ................................................................................. 7

Argument ............................................................................................................................. 10

    I.      To the Extent it Alleges a Pattern and Practice Claim under FOIA, Count I
          Should be Dismissed ......................................................................................... 10

    II.    Count II Must Be Dismissed Because APA Review is Not Available
          Where, As Here, FOIA Provides and Adequate, Alternative Remedy. ............... 19

    III.   Count III Must Be Dismissed Because This Court Lacks Jurisdiction and
          Plaintiff Has Failed to State a Claim for Relief. ................................................ 25

Conclusion ........................................................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*,
    922 F. Supp. 2d 56 (D.D.C. 2013) ........................................................................... 21

*Am. Nat'l Ins. Co. v. FDIC*,
    642 F.3d 1137 (D.C. Cir. 2011) .............................................................................. 20

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ................................................................................. 31

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 10, 11, 15, 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 10, 18

*Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*,
    502 U.S. 32 (1991) ................................................................................................. 31

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ............................................................................................... 21

*Brown v. GSA*,
    425 U.S. 820 (1976) ............................................................................................... 32

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) .............................................................................. 20

*Cent. Platte Natural Res. Dist. v. Dep't of Agric.*,
    643 F.3d 1142 (8th Cir. 2011) ............................................................................... 22

*Chamber of Commerce of the U.S. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) .............................................................................. 32

*CREW v. FEC*,
    711 F.3d 180 (D.C. Cir. 2013) ........................................................................ *passim*

*Coal. for Underground Expansion v. Mineta*,
    333 F.3d 193 (D.C. Cir. 2003) .............................................................................. 20

*Cofield v. United States*,
    64 F. Supp. 3d 206 (D.D.C. 2014) ........................................................................ 26

*Columbia Riverkeeper v. Fed. Energy Regulatory Comm'n,*
  650 F. Supp. 2d 1121 (D. Or. 2009) ............................................................... 22

*Debt Buyers Ass'n v. Snow,*
  481 F. Supp. 2d 1 (D.D.C. 2006) ................................................................... 20

*Dugan v. Rank,*
  372 U.S. 609 (1963) ...................................................................................... 27

*Dynalantic Corp. v. Dep't of*
  *Def.*, 115 F.3d 1012 (D.C. Cir. 1997) .......................................................... 31

*Edmonds Inst. v. Dep't of the Interior,*
  383 F. Supp. 2d 105 (D.D.C. 2005) .............................................................. 22

*EEOC v. St. Francis Xavier Parochial Sch.,*
  117 F.3d 621 (D.C. Cir. 1997) ...................................................................... 10

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.,*
  396 F.3d 1265 (D.C. Cir. 2005) .................................................................... 21

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency,*
  795 F. Supp. 2d 85 (D.D.C. 2011) ................................................................ 22

*EPIC v. DOJ,*
  15 F. Supp. 3d 32 (D.D.C. 2014) ....................................................... 4, 14, 28

*Feinman v. FBI,*
  713 F. Supp. 2d 70 (D.D.C. 2010) ................................................................ 21

*Garcia v. Vilsack,*
  563 F.3d 519 (D.C. Cir. 2009) ................................................................ 21, 24

*Griffith v. F.L.R.A.,*
  842 F.2d 487 (D.C. Cir. 1988) ................................................................ 26, 28

*Harvey v. Lynch,*
  123 F. Supp. 3d 3 (D.D.C. 2015) ............................................................ 21, 22

*Hinck v. United States,*
  550 U.S. 501 (2007) ...................................................................................... 31

*Hunter v. F.E.R.C.,*
  569 F.Supp.2d 12 (D.D.C. 2008) .................................................................. 28

*In re Sealed Case*,
 121 F.3d 729 (D.C. Cir. 1997) ............................................................................. 12, 19

*Judicial Watch v. CFPB*,
 60 F. Supp. 3d 1 (2013) ........................................................................................ 12

*Judicial Watch, Inc. v. Dep't of Energy*,
 412 F.3d 125 (D.C. Cir.2005) ............................................................................... 12

*Judicial Watch, Inc. v. Dep't of Justice*,
 365 F.3d 1108 (D.C. Cir. 2004) .......................................................................... 4, 12

*Kenney v. Dep't of Justice*,
 603 F. Supp. 2d 184 (D.D.C. 2009) ...................................................................... 22

*Kissinger v. Reporters Comm. for Freedom of the Press*,
 445 U.S. 136 (1980) ............................................................................................ 1, 32

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
 511 U.S. 375 (1994) .............................................................................................. 20

*Larson v. Domestic & Foreign Commerce Corp.*,
 337 U.S. 682 (1949) .......................................................................................... 27, 28

*Leedom v. Kyne*,
 358 U.S. 184 (1958) .......................................................................................... 27, 28

*Lion Raisins, Inc. v. Dep't of Agric.*,
 636 F. Supp. 2d 1081 (E.D. Cal. 2009) ................................................................. 22

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990) .............................................................................................. 24

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .............................................................................................. 20

*MacLean v. U.S. Dep't of Army*,
 No. 05–CV–1519, 2007 WL 935604 (S.D.Cal. Mar. 6, 2007) .............................. 23

*Meyer v. Bush*,
 981 F.2d 1288 (D.C. Cir. 1993) .............................................................................. 6

*Muttitt v. Dep't of State*,
 926 F. Supp. 2d 284 (D.D.C. 2013) ......................................................... 11, 15, 18, 24

*National Treasury Employees Union v. Nixon*,
    492 F.2d 587 (D.C. Cir. 1973) ........................................................................ 26

*Nat'l Fed'n of the Blind v. Spellings*,
    562 F. Supp. 2d 74 (D.D.C. 2008) ................................................................ 26

*Nat'l Wildlife Fed'n v. U.S.E.P.A.*,
    949 F. Supp. 2d 251 (D.D.C. 2013) .............................................................. 20

*Nat'l Wrestling Coaches Ass'n v. Dep't of Ed.*,
    366 F.3d 930 (D.C. Cir. 2004) ...................................................................... 31

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977) ...................................................................................... 12

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ........................................................................................ 24

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) .............................................................. *passim*

*People for the Am. Way Found. v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) .............................................................. 22

*Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.*,
    480 F. Supp. 2d 119 (D.D.C. 2007) .............................................................. 22

*Pub. Citizen, Inc. v. Lew*,
    127 F. Supp. 2d 1 (D.D.C. 2000) .................................................................. 25

*Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*,
    839 F. Supp. 2d 304 (D.D.C. 2012) .............................................................. 22

*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) ........................................................................ 22

*Schmidt v. U.S. Capitol Police Bd.*,
    826 F.Supp.2d 59 (D.D.C.2011) .................................................................. 26

*Short v. U.S. Army Corps of Eng'rs*,
    613 F. Supp. 2d 103 (D.D.C. 2009) .............................................................. 14

*Sierra Club v. Dep't of the Interior*,
    384 F. Supp. 2d 1 (D.D.C. 2004) .................................................................. 22

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ............................................................................................ 29

*Switchmen's Un. of N. Am. v. Nat'l Mediation Bd.,*
  320 U.S. 297 (1943) .......................................................................................... 27

*Terry v. Dewine,*
  75 F. Supp. 3d 512 (D.D.C. 2014) ................................................................... 19

*Transohio Savings Bank v. Dir., Off. of Thrift Supervision,*
  967 F.2d 598 (D.C. Cir. 1992) ......................................................................... 20

*Trudeau v. F.T.C.,*
  456 F.3d 178 (D.C. Cir. 2009) ......................................................................... 26

*United States v. Nixon,*
  418 U.S. 683 (1974) .......................................................................................... 19

*Walsh v. Dep't of Veterans Affairs,*
  400 F.3d 535 (7th Cir. 2005) ........................................................................... 22

*Williams v. Lew,*
  819 F.3d 466 (D.C. Cir. 2016) ......................................................................... 30

*Wise v. Glickman,*
  257 F.Supp.2d 123 (D.D.C. 2003) ................................................................... 32

## **Statutes**

28 U.S.C. § 1361 ...................................................................................................... 26

5 U.S.C. § 552 ...................................................................................................... 3, 28

5 U.S.C. § 552(a)(3) ....................................................................................... 2, 21, 23

5 U.S.C. § 552(a)(3)(A) ........................................................................................ 3, 13

5 U.S.C. § 552(a)(4)(B) ............................................................................................. 24

5 U.S.C. § 552(a)(4)(E)(i) .......................................................................................... 14

5 U.S.C. § 552(a)(6)(A) ............................................................................................. 23

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................... 3

5 U.S.C. § 552(a)(6)(B) ..................................................................................... 1, 3, 23

5 U.S.C. § 552(a)(6)(B)(i) ........................................................................................ 3

5 U.S.C. § 552(a)(6)(B)(iii) ................................................................................. 3, 12

5 U.S.C. § 552(a)(6)(C)(i) .................................................................................. 3, 13

5 U.S.C. § 552(b) .................................................................................................... 4

5 U.S.C. § 552(b)(1) ............................................................................................... 4

5 U.S.C. § 552(b)(5) .......................................................................................... 5, 12

5 U.S.C. § 552(f) .................................................................................................... 6

5 U.S.C. § 702 ...................................................................................................... 20

5 U.S.C. § 704 ......................................................................................... 20, 21, 22

## Rules

Federal Rule of Civil Procedure 12(b)(1) .......................................................... 19, 25

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 10, 25

## Other Authorities

Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 3655 (4th ed. April 2016 Update) ....................................... 26

## INTRODUCTION

Plaintiff's complaint in this action stems from the entirely unremarkable proposition that Executive Branch entities are entitled to coordinate prior to the release of documents containing another's equities.  Indeed, the Freedom of Information Act ("FOIA") by its terms expressly approves of such coordination.  *See, e.g.*, 5 U.S.C. § 552(a)(6)(B)(iii).  Nevertheless, Plaintiff takes the position that the head of the Executive Branch – the White House – is not entitled to coordinate or review documents containing its equities, and in fact violates FOIA by doing so.  Aside from the logical flaws, Plaintiff's arguments fail on multiple legal grounds.

First, FOIA empowers district courts only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155 (1980) (holding that the withholding of documents is an "indispensable prerequisite" to FOIA jurisdiction).  Although FOIA obligates federal agencies to "make [non-exempt federal] records promptly available," 5 U.S.C. § 552(a)(3)(A), FOIA creates no independent cause of action arising out of an agency's delays in processing FOIA requests.  Thus, to the extent Plaintiff in Count I seeks an order compelling the production of records based on alleged delay (as opposed to wrongful withholding), the claim must be dismissed.  As the D.C. Circuit has stressed, the failure to meet FOIA's statutory deadlines entitles a requester to sue in district court without further exhausting administrative remedies; it does not entitle the requester to judgment. *See CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013).

Further, to the extent Plaintiff alleges a "pattern and practice" of untimely FOIA responses, that claim should be dismissed.[1]  Plaintiff wholly fails to allege facts establishing that

---

[1] Defendants construe Count I of the Complaint to include a claim under FOIA seeking relief for

*(footnote continued on next page)*

the named agencies have engaged in a pattern or practice that constitutes an ongoing "failure to abide by the terms of the FOIA," as required for such a claim under *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Interagency consultation – including with the White House – is wholly proper, acknowledged in FOIA, and necessary in order to protect privileges such as Exemption's 5's presidential communications privilege, among others. Plaintiff, moreover, concedes that it does not know the cause of the delay it alleges, and alternatively argues that it is either due to White House review or "other reasons having nothing to do with the Craig Memo." Complaint at ¶ 81.

Second, Plaintiff's allegations under the Administrative Procedure Act ("APA") (Count II) fail because because FOIA itself provides an adequate, alternate remedy. The ultimate relief Plaintiff seeks through this action is the disclosure of records, which is the quintessential relief offered by FOIA itself. Because Plaintiff seeks the production of documents under 5 U.S.C. § 552(a)(3), and courts have overwhelmingly concluded that the § 552(a)(3) remedy is adequate to preclude claims under the APA, Count II must also be dismissed.

Finally, Count III of the Complaint fails to state a claim and should likewise be dismissed. That claim, brought solely against the White House Counsel in his official capacity, and the Office of White House Counsel ("OWHC") (collectively, "OWHC Defendants"), relies on no statute at all, but only on the theory that these putative defendants have acted "*ultra vires*" of some legal obligation. Such a theory is not only unsupported by law, but the alleged factual basis – that the Craig Memo requires federal agencies to "delay production of request past

---

the withholding of documents pursuant to the specific requests named in the Complaint, *see* Compl. Exs. 20, 39-40, 44-54. Thus, while Defendants move to dismiss the pattern and practice claim pled under Count I, they do not seek to dismiss that discrete portion of Count I that appropriately states a claim under FOIA for the requested documents.

statutory deadlines" – bears no relationship to the actual text of that memorandum.  Nor has

Plaintiff alleged facts demonstrating that the Craig Memo has actually been the cause of any

delay, or that the OWHC Defendants are "enforcing the Craig Memo" at all, let alone in a way

that "delays production of documents timely under FOIA."  Compl. ¶ 100.  Moreover, because

the FOIA provides a statutory remedy for Plaintiff's alleged injury, this court has no reason to

expand the exceptionally narrow doctrine of non-statutory review to this case.  For all of these

reasons, this court should dismiss Count III, together with Plaintiff's APA and pattern and

practice claims.

## BACKGROUND

## I.     STATUTORY BACKGROUND.

The Freedom of Information Act, 5 U.S.C. § 552, provides a means for the public to

access federal government records, subject to certain exemptions.  Upon receipt of a properly

submitted request that "reasonably describes" the records sought, *id.* § 552(a)(3)(A), an agency

generally must determine within 20 days "whether to comply with such request," *id.*

§ 552(a)(6)(A)(i), and "shall make the records promptly available" to the requester, *id.*

§ 552(a)(3)(A).  FOIA permits an agency to extend this 20-day deadline by no more than 10 days

in "unusual circumstances[,]" including "the need for consultation . . . with another agency

having a substantial interest in the determination of the request."  *Id.* §§ 552(a)(6)(B)(i), (iii).

FOIA directs that, if an agency fails to make a determination within 20 days, a requestor

"shall be deemed to have exhausted his administrative remedies with respect to such request."

*Id.* § 552(a)(6)(C)(i).  "If the agency does not adhere to FOIA's explicit timelines, the 'penalty'

is that the agency cannot rely on the administrative exhaustion requirement to keep cases from

getting into court."  *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW*").  The statute

does not suggest any other consequences for an agency's failure to make a determination within 20 days. Rather, the 20-day timeline – and an agency's failure to meet that timeline – sets forth a condition that must be met before a court may exercise or retain jurisdiction over the underlying FOIA claim. *EPIC v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("*EPIC*") ("[F]ar from . . . reading . . . FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20–day deadline relates only to the requester's ability to get into court.").

As noted, not all types of records need to be disclosed under FOIA. The Act contains nine specific exemptions, which allow an agency to withhold the information falling within such exemptions. *See id.* § 552(b). The most relevant exemption here is § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"[2] This exemption includes the privileges traditionally available to the government in civil discovery, such as the deliberative process and presidential communications privileges. *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

## II.     FACTUAL AND PROCEDURAL HISTORY.

### A.  History of White House Consultation on Records Requested Under the FOIA

At least since 1988, the White House Counsel has requested that executive agencies consult with the White House Counsel's Office on requests for records relating to the White

---

[2] Although Exemption 5 seems most relevant to the types of requests Plaintiff has submitted that underlie this case, other exemptions would surely apply to records implicating "White House equities," including, for example, Exemption 1. *See* 5 U.S.C. § 552(b)(1) (exempting from disclosure records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order").

House.  In 1988, the Assistant Attorney General for the Office of Legal Policy at the Department

of Justice issued a memorandum to agency FOIA contacts directing that "agencies should

implement . . . [certain] procedures" for review by the "Office of the Counsel to the President" of

"[r]ecords originating with or involving the 'White House Office,'" which is defined to include

the "offices over which the Office of the Chief of Staff directly presides," that is, the President's

closest advisors.  *See* Memorandum from Stephen J. Markman, Assistant Attorney General,

Office of Legal Policy, to Freedom of Information Act/Privacy Act Legal and Administrative

Contacts (Sept. 1, 1988), *available at* http://causeofaction.org/assets/uploads/2014/04/1988-

memo.pdf ("Markman Memo"), at 1.  The Markman Memo directs that such records "should be

forwarded to the Office of the Counsel to the President for any recommendations or comments it

may wish to make prior to [an agency's] final response to the requester."  *Id.*  The Markman

Memo also provides that "records originating with other offices within the Executive Office of

the President (EOP)" – then defined to include the Council of Economic Advisors, the Council

on Environmental Quality, the Office of Administration, the Office of Management and Budget,

the Office of Science and Technology Policy, and the Office of the U.S. Trade Representative –

"must be referred to the proper EOP office for consultation purposes only" and "agencies should

respond directly to the request when these consultations have been completed."  *Id.* at 2, 3.

According to the Markman Memo, the procedures were developed following consultation

between and by agreement of the Department of Justice and the Office of the Counsel to the

President.  *Id.* at 1.

   In 1992, the Director of the Office of Policy Development at the Department of Justice

issued a memorandum to agency FOIA contacts which "supersede[d]" the Markman Memo.  *See*

Memorandum from Steven R. Schlesinger, Director, Office of Policy Development to Freedom

of Information Act/Privacy Act Legal and Administrative Contacts (Jan. 28, 1992), *available at*

http://causeofaction.org/assets/uploads/2014/04/1992-memo.pdf ("Schlesinger Memo").  The

Schlesinger Memo leaves the above-mentioned procedures unchanged, but clarifies how an

agency should handle documents that the agency would be withholding in full on grounds

relating to the interests of the agency, and also specifically addresses the treatment of "records

originating with the National Security Council."  *Id.* at 1-2.

On November 3, 1993, the Associate Attorney General issued a memorandum to agency

FOIA contacts which "supersede[d]" the Schlesinger Memo, and provided additional detail

regarding the procedures for White House consultation on agency records subject to FOIA.  *See*

Memorandum from Associate Attorney General Webster L. Hubbell to all Agency General

Counsels (Nov. 3, 1993), *available at* https://www.justice.gov/oip/blog/foia-update-foia-memo-

white-house-records ("Hubbell Memo").  The Hubbell Memo cited to *Meyer v. Bush*, 981 F.2d

1288, 1291 n.1 (D.C. Cir. 1993) (quoting H.R. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974)),

which explained that "FOIA applies to 'the Executive Office of the President,' 5 U.S.C. § 552(f),

but this term does not include either 'the President's immediate personal staff' or any part of the

Executive Office of the President 'whose sole function is to advise and assist the President.'"  *Id.*

The Hubbell Memo "set forth the procedures to be followed by all federal agencies" handling

"any White House-originated record or information" responsive to FOIA requests; these

procedures were determined by the Department of Justice "[i]n coordination with the Office of

the Counsel to the President."  *Id.*  By the terms of the Hubbell Memo, this includes "all White

House-related records or information found in [agencies'] files."  *Id.*  The Hubbell Memo directs

that such records "should be forwarded to the Office of the Counsel to the President for any

recommendation or comment it may wish to make, including any assertion of privilege, prior to

[an agency's] response to the FOIA requester." *Id.* at 1.  The Hubbell Memo further directs

agencies that agencies are "responsible for responding directly to the FOIA requester once the

process of consultation is completed." *Id.*[3]

In addition to the Department of Justice's guidance, on April 15, 2009, then-White House

Counsel Gregory Craig issued a memo to the general counsels of all executive departments and

agencies entitled "Reminder Regarding Document Requests." *See* Compl., Ex. 1 ("Craig

Memo").  The Craig Memo states that it "is a reminder that executive agencies should consult

with the White House Counsel's Office on all document requests that may involve documents

with White House equities" and "ask[s] that such consultation take place well in advance of the

deadline for responding." *Id.*  It further states that "[t]his need to consult with the White House

arises with respect to all types of documents requests, including . . . FOIA requests" and "applies

to all documents and records . . . that relate to communications to and from the White House,

including preparations for such communications." *Id.*

### B.  The Instant Lawsuit

On July 29, 2015, Plaintiff submitted virtually identical FOIA requests to the Internal

Revenue Service ("IRS") , United States Department of Defense, Environmental Protection

Agency ("EPA"), United States Department of Interior, United States Department of Energy,

---

[3] Plaintiff asserts, on the basis of a 2013 memorandum from the Chief of Staff of the Department of Justice ("DOJ") Office of Information Policy to an attorney in the DOJ Office of Legal Counsel concerning DOJ's response to an individual FOIA request, that the Craig Memo "supersedes" the Hubbell Memo. *See* Compl. ¶ 35 & Ex. 2.  However, Plaintiff has failed to allege why this internal, administrative DOJ memorandum governing a specific case constitutes DOJ's official guidance to other Executive Branch agencies regarding FOIA consultations with the White House, when DOJ's practice, as reflected in the Markman, Schlesinger, and Hubbell Memos, was to issue guidance to all Executive Branch agencies' general counsels, governing all FOIA requests, and to indicate in that guidance whether previously issued guidance had been superseded.

United States Department of Health and Human Services ("HHS"), United States Department of

Homeland Security, DOJ, United States Department of State, United States Department of

Transportation, and United States Department of the Treasury (collectively, the "Agency

Defendants").  *See* Compl., Exs. 44-54.  Each request sought three categories of information:

    (1)  for the agency head (the Commissioner of the IRS, the Administrator of the EPA, the Attorney General or, for all other Agency Defendants, the Secretary), "[a]ll travel records . . . related to travel (a) on Air Force One, (b) with the President or Vice President, or (c) to or from meetings with the President or Vice President outside of Washington, D.C., from January 1, 2014 to the present";

    (2)  for the agency head (the Commissioner of the IRS, the Administrator of the EPA, the Attorney General or, for all other Agency Defendants, the Secretary), "[a]ll work calendars . . . related to meetings that (a) occurred at the White House or (b) included representatives of the Executive Office of the President from January 1, 2014 to the present"; and

    (3)  "[a]ll records of correspondence received by [certain agency offices] from (a) Senator Barack Obama, or any member of Senator Obama's congressional staff, or (b) Senator Joseph Biden, or any member of Senator Biden's congressional staff, from January 3, 2005 to November 3, 2008."

*See id.*  Plaintiff has not yet received final determinations from the Agency Defendants.

Additionally, in 2013, Plaintiff submitted three FOIA requests to HHS, for which Plaintiff has

not yet received a final determination from the agency.  *See* Compl. ¶¶ 61-62 & Exs. 20, 39-40.

       In the present lawsuit, Plaintiff seeks access to the records requested through these

various FOIA requests.  Compl. ¶¶ 77-83.  The complaint generally claims that responses to

Plaintiff's requests have been delayed as a result of what Plaintiff calls the "White House

equities review practice."  *See, e.g., id.* ¶ 5.  Plaintiff asserts that HHS "has specifically withheld

present requests because the documents are being reviewed by the OWHC."  *Id.* ¶ 79.  With

respect to the remaining Agency Defendants, Plaintiff posits alternative theories for why they

have not yet issued final determinations for Plaintiff's FOIA requests: either (1) "the agencies

have engaged in a pattern or practice of forwarding many of their responses to pre-production

review by OWHC when such review is unnecessary and/or results in delay"; or (2) "the non-HHS Agency Defendants . . . have not sought to consult with the White House on any documents" but "the delay is unsupported by even a proffered representation by the Agency Defendants as to the need for delay." *Id.* ¶¶ 80-81.  Count I of the complaint asks the Court to "enjoin agency practices and procedures that violate the mandates of FOIA and order the prompt production of all documents delayed by White House review." *Id.* ¶ 83.

In Count II, Plaintiff contends that federal agencies' "delays compl[ying] with FOIA deadlines" are "arbitrary, capricious, . . . [and] otherwise not in accordance with law" under the Administrative Procedure Act.  Compl. ¶¶ 86, 93.  Plaintiff specifies that the Agency Defendants' "compliance with the Craig Memo is arbitrary, capricious, and contrary to FOIA because the Agency Defendants have no grounds to delay FOIA productions for years at the insistence of the White House for its political convenience." *Id.* ¶ 86.  Plaintiff asks the Court to "declare that Agency Defendants' compliance with the Craig Memo is unlawful to the extent that it delays compliance with FOIA deadlines and enjoin such conduct." *Id.* ¶ 93.

Finally, in Count III, Plaintiff contends that the Craig Memo constitutes an "*ultra vires* directive" to "federal agencies to submit their responses to OWHC for pre-production review when those requests implicate 'White House equities'" and "to delay production until White House review is complete," and that this "interference with agency FOIA practices violates the response procedures and deadlines established by FOIA." *Id.* ¶¶ 95-97.  Citing to two opinions by the Court of Appeals for the D.C. Circuit, Plaintiff asserts that "[t]his Court has authority to enjoin *ultra vires* actions by agents and organs of the federal government, even in the absence of express statutory causes of action," and asks the Court to "[e]njoin Mr. Eggleston and the OWHC from enforcing the Craig Memo . . . to the extent it delays production of documents

9

timely under FOIA." *Id.* ¶ 100.

**ARGUMENT**

**I.     TO THE EXTENT IT ALLEGES A PATTERN AND PRACTICE CLAIM UNDER FOIA, COUNT I SHOULD BE DISMISSED.**

The Agency Defendants move to dismiss the pattern and practice claim alleged in Count I of the Complaint for failure to state a claim upon which relief may be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint satisfies the plausibility standard when the "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678-79.

"Pattern and practice" claims in FOIA, also referred to as "policy and practice" claims, are a narrow exception to the principle that FOIA lawsuits must be litigated based on individual FOIA claims (and that such claims are moot once the requested documents are provided).  *See*

10

*Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  Plaintiff's pattern and practice claim fails to fit within this narrow exception.

In *Payne Enterprises*, for almost two years, officers at Air Force Logistics Command ("AFLC") bases "refused to fulfill Payne's requests for copies of bid abstracts when there was limited competition for a contract," despite there being no applicable FOIA exemption.  *Id.* at 494.  The officers were admonished by the Secretary of the Air Force's Office, but no firm action was taken to end their recalcitrance.  Thus, "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offer[ed] no justification, entitle[d] Payne to declaratory relief."  *Id.*

"To state a claim for relief under the 'policy or practice' doctrine articulated in *Payne* . . . a plaintiff must allege . . . facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'"  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enterprises*, 837 F.2d at 491).  Plaintiff alleges no such identifiable policy or practice constituting a "failure to abide by the terms of the FOIA."  Instead, Plaintiff merely alleges two legal conclusions: (1) that the Agency Defendants "have engaged in a pattern or practice of forwarding many of their responses to pre-production review by OWHC when such review is unnecessary" and (2) that such review "causes violations of FOIA statutory deadlines."  Compl. ¶¶ 80, 83.  Both legal conclusions are contrary to established precedent.  Moreover, "[w]hile legal conclusions can provide the framework of a complaint," they are insufficient standing alone and "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

Plaintiff's pattern and practice claim ultimately rests on a faulty understanding of two aspects of the FOIA.  First, related to legal conclusion (1), FOIA clearly contemplates

consultation within the Executive Branch (of which the White House is part). FOIA expressly

recognizes the "need for consultation . . . with another agency having a substantial interest in the

determination of the request." 5 U.S.C. § 552(a)(6)(B)(iii)(III).[4] Moreover, Exemption 5 of

FOIA, pursuant to which the government may withhold "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the

agency," 5 U.S.C. § 552(b)(5), has been construed to incorporate the presidential

communications privilege, among other privileges. *Judicial Watch*, 365 F.3d at 1113 (citing

cases). Although the presidential communications privilege provides "great[] protection against

disclosure," its applicability is "limited to communications 'in performance of (a President's)

responsibilities,' 'of his office,' and made 'in the process of shaping policies and making

decisions.'" *Id.* at 1113 (citing *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977)). As

the D.C. Circuit explained in *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997), the

privilege can be invoked to withhold "documents or other materials that reflect presidential

decision-making and deliberations and that the President believes should remain confidential."

Moreover, the privilege applies "beyond communications directly involving and documents

actually viewed by the President, to the communications and documents of the President's

immediate White House advisers and their staffs." *Judicial Watch*, 365 F.3d at 1114 (citing *In re*

*Sealed Case*, 121 F.3d at 752). Because the privilege extends to the President's immediate

White House advisors and their staffs, it is beyond doubt that consultation with the White House

---

[4] Although the White House is not an "agency" subject to FOIA, it does not follow that White House communications are unprotected under FOIA, or that the White House is somehow outside the Executive Branch. *See, e.g., Judicial Watch v. CFPB*, 60 F. Supp. 3d 1, 10 (2013) (citing *Judicial Watch, Inc. v. Dep't of Energy,* 412 F.3d 125 (D.C.Cir.2005) (Exemption 5's "interagency" threshold requirement was satisfied for communications exchanged between agencies and the Office of the President, even though that office is not an agency for the purposes of FOIA)).

– which the White House can choose to route through the OWHC – may be necessary for certain documents.  And it cannot reasonably be disputed that some FOIA requests submitted to the Agency Defendants (as well as other non-defendant federal agencies) will seek documents potentially implicating the presidential communications privilege.  Indeed, Plaintiff's requests – which seek travel records related to Air Force One, the President, and Vice President, and work calendars related to meetings at the White House and representatives of the Executive Office of the President – are such requests.

Similarly, legal conclusion (2) rests on a fundamental misunderstanding of the FOIA's statutory timeframe.  Although the FOIA obligates federal agencies to "make [non-exempt federal] records promptly available," 5 U.S.C. § 552(a)(3)(A), the consequence for an agency's failure to comply with the statutory timeframes is a lawsuit against it in federal court.  There is simply no judicially-enforceable right to the absence of delay in processing FOIA requests, and delay in processing FOIA requests is an unfortunate reality facing many federal agencies.

FOIA directs that, if an agency fails to make a determination within 20 days, a requestor "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i). And, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review" with respect to that particular request.  *Id.*  The 20-day timeline – and an agency's failure to meet that timeline – simply sets forth a condition that must be met before a court may exercise or retain jurisdiction over the underlying FOIA claim.  It does not so much as hint at any other consequences for an agency's failure to make a "timely" determination.  *See CREW*, 711 F.3d at 189-90 ("penalty" for agency's nonadherence to FOIA's timelines "is that the agency cannot rely on the

13

administrative exhaustion requirement to keep cases from getting into court."); *EPIC*, 15 F.

Supp.3d at 41 ("*CREW* makes clear that the impact of blowing the 20-day deadline relates only

to the requestor's ability to get into court.").  Once a lawsuit is filed, the agency "may continue

to process the request," but will do so under the court's supervision.  *CREW*, 711 F.3d at 189.[5]

This interpretation reflects practical realities.  FOIA sets up "a comprehensive scheme

that encourages prompt request-processing and agency accountability," while recognizing that

adherence to the 20-day timetable is not always possible.  *Id.*  The *CREW* court agreed that "it

would be a practical impossibility for agencies to process all [FOIA] requests completely within

twenty days," and ruled that the purpose of FOIA's unusual and exceptional circumstances

provisions is to recognize and accommodate that reality.  *Id.*; *see also EPIC*, 15 F. Supp. 3d at 42

("*CREW* also clearly recognizes that the 20-day determination deadline is not always practicable,

and it explains what happens when that deadline is not met: in such circumstance, the FOIA

requestor is deemed to have exhausted his administrative remedies and can proceed immediately

to federal court.").

In light of this precedent, Plaintiff's theory is plainly incorrect.  Some agencies will

determine that consultation with OWHC is necessary before a response to a FOIA request can

issue.  And some agencies will necessarily not be able to respond to every FOIA request within

the statutory timeframe, regardless of whether OWHC consultation is necessary for a given

request.  So although Plaintiff has alleged that the Agency Defendants "have engaged in a pattern

---

[5] Because the only relief available to a plaintiff alleging an agency did not respond to its FOIA request in accordance with the statutory timeline is district court jurisdiction to supervise the agency's processing of the request and, should the plaintiff satisfy the applicable standards, reasonable attorney fees, 5 U.S.C. § 552 (a)(4)(E)(i); *see also Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106-07 (D.D.C. 2009), to the extent Plaintiff seeks other relief under Count I on the basis of the agencies' delays in responding to its requests, that claim should be dismissed.

or practice," Compl. ¶ 80, with respect to FOIA processing that, in some cases, involves

consultation with OWHC before releasing records responsive to a FOIA request even where the

Agency Defendants will not be able to comply with the statutory timeframe (either because the

agency's FOIA review process itself will exceed the statutory timeframe, or because consultation

with OWHC will result in the agency missing the statutory deadline), Plaintiff has nonetheless

failed to allege that this pattern or practice "constitutes an ongoing 'failure to abide by the terms

of the FOIA,'" as it must to bring a pattern or practice claim under FOIA.  *See Muttitt*, 926 F.

Supp. 2d at 293 (D.D.C. 2013) (quoting *Payne Enterprises*, 837 F.2d at 491).

Moreover, Plaintiff's Complaint contains no factual allegations plausibly establishing

either (1) that the Agency Defendants "have engaged in a pattern or practice of forwarding many

of their responses to pre-production review by OWHC when such review is unnecessary" or (2)

that such review "causes violations of FOIA statutory deadlines."  Compl. ¶¶ 80, 83.  To state a

valid claim, a complaint must allege *facts* that plausibly give rise to an entitlement to relief,

rather than make conclusory assertions.  *See Iqbal,* 556 U.S. at 679.  But Plaintiff's Complaint

does not contain *factual* allegations regarding several key elements of its claim.  For example,

Plaintiff's pattern and practice claim centrally depends upon the validity of its (incorrect)

assertion that the Agency Defendants are forwarding documents to OWHC for review where

"such review is unnecessary" in violation of FOIA.  Compl. ¶¶ 80, 83.  But rather than include

allegations *factually* describing instances in which an agency sent documents to OWHC for

review where "such review is unnecessary," Plaintiff instead asserts in conclusory fashion that

"[n]one of the CoA Institute FOIA requests at issue requires production of documents originating

with the White House or that contain White House-originated information."  Compl. ¶ 70.  And

that assertion is different from Plaintiff's claim that Defendant Agencies "forwarded . . . their

15

responses to pre-production review by OWHC when such review is unnecessary." *Id.* ¶ 80.

Further, Plaintiff has asserted no factual allegations as to why "such review is unnecessary" for

these requests.  As the above-discussed precedent makes clear, courts recognize and FOIA

Exemption 5 contemplates that White House consultation may be necessary before an agency

can respond to a FOIA request that seeks records implicating the presidential communications

privilege.  While Plaintiff disputes that the records it seeks "originat[e] with the White House or

. . . contain White House-originated information," it does not dispute that its outstanding requests

to the Agency Defendants might implicate the presidential communications privilege.

Similarly, Plaintiff's pattern and practice claim centrally depends upon the validity of its

(legally infirm) theory that agencies must not undertake any steps which will "delay[] final

determination on FOIA requests and the prompt production of responsive documents far past

FOIA statutory deadlines."  Compl. ¶ 4; *see also id.* ¶¶ 8, 83.  But rather than include allegations

*factually* describing instances in which OWHC review prevented an agency's "prompt

production of responsive documents" within the FOIA's timeline, Plaintiff instead asserts in

conclusory fashion that "[r]eview by OWHC is a but-for cause of delays in responsive FOIA

productions beyond the time required by the agency FOIA response queues" and "[r]esponses to

many CoA Institute FOIA requests have been unlawfully delayed due to unnecessary

consultation with the White House."  *Id.* ¶¶ 80, 60; *see also id.* ¶¶ 61, 65, 79 & Ex. 38

(suggesting, simply on the basis of a single email reflecting that HHS forwarded records

responsive to a Plaintiff FOIA request to the OWHC, but not showing when or how OWHC

responded to that email, that "the Craig Memo in practice and in fact causes substantial delays").

While Plaintiff has identified a single example of a FOIA request that remains

outstanding and for which Plaintiff has evidence that the agency even sent responsive documents

to the OWHC, it has failed to articulate a pattern or practice.  With respect to HHS, Plaintiff has

alleged nothing more than that HHS alerted the OWHC to one of Plaintiff's several FOIA

requests to HHS and provided the OWHC with a subset of documents responsive to that request,

and that HHS has not yet completed its response to that FOIA request.  *See id.* ¶ 61, 87.  This

single, inconclusive example, Plaintiff alleges, demonstrates that "HHS . . . has indisputably

followed the Craig Memo directives rather than FOIA requirements."  *Id.* at ¶ 87.  But while this

example indicates that with respect to a portion of one FOIA request, HHS alerted OWHC to a

FOIA request and subset of responsive documents, it fails to show that HHS engages in any

pattern or practice of pre-production review by OWHC that is the but-for cause of delays by

HHS in responding to FOIA requests.

   And with respect to the remaining Agency Defendants, Plaintiff's Complaint relies

entirely on Plaintiff's speculation that the Agency Defendants are engaging in some kind of

consultation with the White House and that such consultation is contributing in some way to the

amount of time it takes the Agency Defendants to respond to their FOIA requests.  *See id.* at ¶ 80

("The reason, in whole or in part, for the failure of the Agency Defendants to comply with their

response deadlines under FOIA is that the CoA Institute requests implicate 'White House

equities' within the meaning of the Craig Memo . . . [and] the agencies have engaged in a pattern

or practice of forwarding many of their responses to pre-production review by OWHC when

such review . . . results in delay.  Review by OWHC is a but-for cause of delays in responsive

FOIA productions beyond the time required by the agencies' FOIA response queues.")  Further

fatal to their pattern and practice claim, Plaintiff concedes that for the 10 non-HHS Agency

Defendants, Plaintiff has no idea why the Agency Defendants have not yet responded to their

FOIA requests or whether the Agency Defendants are even consulting with the White House on

their FOIA requests.  *Id.* at ¶ 81 ("In the alternative, the non-HHS Agency Defendants are delaying for reasons having nothing to do with the Craig Memo and have not sought to consult with the White House on any documents.").

Plaintiff thus has failed to identify a pattern or practice – as opposed to isolated incidents which, rather than revealing an agency policy actually reflect that the agencies exercise discretion on a case-by-case basis – by any of the Agency Defendants that they challenge here. And even if Plaintiff's allegations could be understood to identify a pattern or practice by the agencies, it is not a pattern or practice that "constitutes an ongoing 'failure to abide by the terms of the FOIA,'" as is required to bring a pattern or practice claim under FOIA.  *See Muttitt*, 926 F. Supp. 2d at 293 (D.D.C. 2013) (quoting *Payne Enterprises*, 837 F.2d at 491).

Plausibly alleging an entitlement to relief "requires more than labels and conclusions." *Twombly,* 550 U.S. at 555.  Plaintiff's apparent inability to plausibly allege that the Agency Defendants' consultation with OWHC constitutes an ongoing failure to abide by the terms of the FOIA underscores that the pattern and practice claim in Count I should be dismissed.

That conclusion is further confirmed by the President's important interest in protecting presidential decision-making and deliberations.  Adopting the implicit premise of Plaintiff's Complaint – that agencies may not afford the OWHC an opportunity to review documents responsive to a FOIA request prior to the documents' release if such review is a "cause of delays in responsive FOIA productions beyond the time required by the agency FOIA response queues," Compl. ¶ 80, or, in other words, will take any time at all – would call into question the President's ability to invoke his privilege at all.

Plaintiff's argument and its accompanying prayer for relief – seeking a judicial order "enjoin[ing] each Agency Defendant from consulting with OWHC pursuant to the [Craig

Memo], except insofar as consultation does not delay production of documents, Compl. p. 32 – is not only incorrect as a matter of law, *see supra* at 11-14, but would also significantly interfere with the President's ability to perform his constitutional duties.  As the Supreme Court has recognized, "the President's Article II powers and responsibilities [form] the constitutional basis of the presidential communications privilege," *In re Sealed Case*, 121 F.3d at 730 (citing *United States v. Nixon*, 418 U.S. 683, 705 & n. 16 (1974)), and "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately," *United States v. Nixon*, 418 U.S. at 708, 94.  Under Plaintiff's proposal, the consultation necessary for the President and his White House advisors to invoke the presidential communication privilege where appropriate to prevent disclosure of privilege material would be prohibited if such consultation resulted in *any delay* in the production of documents.  The FOIA's careful balance between timely disclosure of agency records and the protection of privileged material neither compels nor countenances such a rule.  To the contrary, it permits precisely the type of individualized determinations about White House consultations in which Agency Defendants engage.  For all of these reasons, Plaintiff has failed to state a pattern and practice claim under FOIA and Count I must be dismissed to the extent it asserts such a claim.

## II.     COUNT II MUST BE DISMISSED BECAUSE APA REVIEW IS NOT AVAILABLE WHERE, AS HERE, FOIA PROVIDES AN ADEQUATE, ALTERNATIVE REMEDY.

The Agency Defendants move to dismiss Count II of the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Iqbal*, 556 U.S. at 678-79.  Because "[f]ederal courts are courts of limited jurisdiction," a court "begins with the presumption that it does not have subject matter jurisdiction over a case." *Terry v. Dewine*, 75 F.

Supp. 3d 512, 519 (D.D.C. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Debt Buyers Ass'n v. Snow*, 481 F. Supp. 2d 1, 8 (D.D.C. 2006).  When considering such a motion, the Court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotations omitted).  When necessary, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Nat'l Wildlife Fed'n v. U.S.E.P.A.*, 949 F. Supp. 2d 251, 254 (D.D.C. 2013).  But the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

The Administrative Procedure Act permits review of "final agency action."  5 U.S.C. § 704.  Although section 702 of the APA, 5 U.S.C. § 702, waives sovereign immunity for certain types of claims, a determination of "[w]hether § 702 of the APA justifies district court jurisdiction over [plaintiff's] case depends on whether [plaintiff's] claims fall under any of the limitations on the APA's waiver of sovereign immunity."  *Transohio Savings Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992).  Of particular importance here, "[t]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy

is available elsewhere . . . ." *Id.* In that regard, section 704 of the APA provides that "[a]gency action made reviewable by statute and final agency action for which there is *no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added); *see generally Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").

Plaintiff's APA claim here seeks the same ultimate relief – access to the requested records – that Plaintiff can seek (and is in fact seeking in Count I) through individual FOIA requests submitted under 5 U.S.C. § 552(a)(3). Because FOIA provides Plaintiff with an adequate remedy, the APA claim must be dismissed. This conclusion is consistent with the overwhelming weight of case law, both in this Circuit and elsewhere.

For a statute to provide an "adequate" remedy, the D.C. Circuit has explained that "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). Additionally, a statute is considered to provide an adequate remedy when it offers de novo district court review of a claim. *See El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("Succinctly put, where a statute affords an opportunity for de novo district-court review, the court has held that APA review was precluded[.]" (internal quotation marks and modifications omitted)).

Consistent with this framework, courts within this Circuit have concluded that litigants cannot bring APA claims when the type of relief they seek is available under FOIA itself. *See, e.g., Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) ("This court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by

FOIA."); *see also Harvey v. Lynch*, 123 F. Supp. 3d 3, 7-8 (D.D.C. 2015); *Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C. 2013); *Pub. Employees for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 317 (D.D.C. 2012); *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011); *Kenney v. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 308 (D.D.C. 2007); *Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 121 n.2 (D.D.C. 2007); *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005); *Sierra Club v. Dep't of the Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).[6]

Particularly instructive here, courts have specifically concluded that litigants cannot bring APA claims that an agency has failed to comply with FOIA's statutory timeline, no matter the alleged cause. *See, e.g., Harvey*, 123 F. Supp. 3d at 7-8 (finding that settled precedent makes clear that "a FOIA requester may not seek relief under the APA for a violation of the FOIA," including where "[p]laintiff's APA claim is predicated on [agency's] failure to comply with FOIA deadlines"); *Edmonds Inst.*, 383 F. Supp. 2d at 111 (D.D.C. 2005) (finding APA review unavailable because FOIA provides an adequate remedy for plaintiff's claim that agency "acted

---

[6] Courts outside this Circuit have reached the same conclusion. *See Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012) ("[T]he district court's ability to conduct a de novo review of Rimmer's FOIA request and, if it were to rule in Rimmer's favor, to order relief identical to that provided under the APA, i.e., production of the unredacted documents Rimmer seeks, clearly provides an alternate adequate remedy in court and thus triggers § 704's bar on claims brought under the APA."); *see also Cent. Platte Natural Res. Dist. v. Dep't of Agric.*, 643 F.3d 1142, 1149 (8th Cir. 2011); *Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537-38 (7th Cir. 2005); *Columbia Riverkeeper v. Fed. Energy Regulatory Comm'n*, 650 F. Supp. 2d 1121, 1126 (D. Or. 2009); *Lion Raisins, Inc. v. Dep't of Agric.*, 636 F. Supp. 2d 1081, 1115 (E.D. Cal. 2009).

contrary to law in violation of the APA when it failed to respond to [plaintiff's] FOIA requests within the twenty working days required by [the FOIA] statute").[7]

Here, Plaintiff plainly can seek (and *has* sought in Count I) the same ultimate relief it seeks in this lawsuit (access to agency records) through FOIA itself.  Plaintiff has submitted standard FOIA requests to the Agency Defendants pursuant to 5 U.S.C. § 552(a)(3), identifying those records that Plaintiff would like to be disclosed.  *See* Compl., Exs. 20, 39-40, 44-54.  As Plaintiff has alleged, the Agency Defendants "fail[ed] to make a determination as to CoA Institute FOIA requests and produce responsive documents within the statutory time limit set forth in 5 U.S.C. §§ 552(a)(6)(A) [and] (B)."  *Id.* ¶ 77.  As a result of this failure, Plaintiff is entitled to "court . . . supervis[ion of] the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request."  *CREW*, 711 F.3d at 189.  Counts I and II both ultimately seek the records responsive to Plaintiff's FOIA requests.

The pattern or practice claim based on the delay allegedly caused by the White House equities review practice is also alleged in both Count I, under FOIA, and Count II, under the APA.  Compare Compl. ¶¶ 80, 83 (Count I) ("Rather than completing their FOIA productions independently, the agencies have engaged in a pattern or practice of forwarding many of their responses to pre-production review by OWHC when such review is unnecessary and/or results in delay. . . .  This Court should use its authority to enjoin agency practices and procedures that violate the mandates of FOIA and order prompt production of all documents") with *id.* ¶¶ 88, 93

---

[7] *See also Walsh*, 400 F.3d at 537-38 (affirming dismissal of APA claim and finding no judicial review available for agency violations of FOIA's statutory timeline under the APA); *MacLean v. U.S. Dep't of Army*, No. 05–CV–1519, 2007 WL 935604, at *6 (S.D.Cal. Mar. 6, 2007) (granting summary judgment for agency on claims for declaratory relief under APA, finding no authority "that a [FOIA] requester has an additional declaratory remedy" under the APA "for an agency's failure to timely respond to an FOIA request").

(Count II) ("the Craig Memo causes the Agency Defendants to engage in a pattern and practice of delaying FOIA requests due to White House consultations. . . .  The Court should . . . declare that Agency Defendants' compliance with the Craig Memo is unlawful to the extent it delays compliance with FOIA deadlines and enjoin such conduct").  The claim is the same, and FOIA permits review of pattern and practice claims in certain limited circumstances.  *See Payne Enters.,* 837 F.2d at 491 (a pattern and practice claim may go forward only where a requestor can show that the agency has engaged in a discrete and egregious pattern and practice of violating FOIA that rises above the level of routine agency delay, and that such a practice "will impair the party's lawful access to information in the future"); *Muttitt*, 926 F. Supp. 2d at 293 (D.D.C. 2013) ("To state a claim for relief under the 'policy or practice' doctrine articulated in *Payne* . . . a plaintiff must allege . . . facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" (quoting *Payne Enters.*, 837 F.2d at 491)).[8]

Thus, the remedies FOIA provides – disclosure of records responsive to specific FOIA requests, and prospective relief for adequately-pled pattern and practice claims – are plainly "of the 'same genre'" as what Plaintiff requests in Count II.  *Garcia*, 563 F.3d at 522.  And, of course, such relief would remedy precisely the sort of "informational injuries" that Plaintiff alleges.  *See* Compl. ¶ 60 ("Responses to many CoA Institute FOIA requests have been unlawfully delayed due to unnecessary consultation with the White House."); *id.* ¶ 5 ("CoA

---

[8] Additionally, a pattern and practice claim, such as Plaintiff brings here is suspect under the APA, because it is in tension with the APA's requirement that a discrete agency action be challenged.  *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (for an APA claim, a plaintiff must "assert[] that an agency failed to take a discrete agency action that it is required to take."); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (for an APA claim, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm," as opposed to seeking broad improvements within an agency's overall program).

Institute has made several FOIA requests for production of documents . . . that have been or will continue to be delayed due to the 'White House equities' review practice.").

It is true that certain types of legal claims related to FOIA practices may be pursued under the APA rather than under FOIA itself.  But that exception applies only when a plaintiff challenges a peripheral practice unconnected to the disclosure of documents – a practice which therefore cannot be remedied by FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B). *See, e.g., Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 9 (D.D.C. 2000) ("Other FOIA actions outside the scope of § 552(a)(4)(B) . . . are reviewed under the standards set forth in § 706 of the APA."). Here, however, Plaintiff's claim can easily be remedied through § 552(a)(4)(B) through an order directing the Agency Defendants to disclose requested documents.  And to the extent the Court would find that Plaintiff has adequately pled a pattern and practice claim under the FOIA and established its right to relief, that claim would also be remedied through the Court's equitable powers to enforce the terms of FOIA and enjoin the Agency Defendants from "an illicit practice of delay."  *Payne Enters.*, 837 F.2d at 494-95.  Thus, Plaintiff's claim does not fall within the exception recognized by the *Public Citizen* decision.

In sum, a FOIA claim offers Plaintiff essentially the same relief that Plaintiff seeks through its APA claim.  Consistent with the overwhelming weight of authority, therefore, Count II should be dismissed because FOIA provides an adequate, alternate remedy.

## III.   COUNT III MUST BE DISMISSED BECAUSE THIS COURT LACKS JURISDICTION AND PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF.

W. Neil Eggleston, in his official capacity as White House Counsel, and the Office of the White House Counsel (collectively, "OWHC Defendants") move to dismiss Count III of the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1), and, in the alternative, for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9]

Count III is premised on Plaintiff's absurd theory that the OWHC Defendants have acted "*ultra vires*" of some legal obligation in issuing a memorandum asking Executive Branch agencies to "consult with the White House Counsel's Office on all document requests that may involve documents with White House equities . . . well in advance of the deadline for responding." Compl., Ex. 1. In support of its claim, Plaintiff relies on no statute either providing this Court jurisdiction or creating a cause of action for Plaintiff's claim.[10] Instead, Plaintiff entitles its claim one for "Nonstatutory Review of *Ultra Vires* Action" and asserts that "[t]his Court has authority to enjoin *ultra vires* actions by agents and organs of the federal government, even in the absence of express statutory causes of action." Compl. ¶ 98. However, to the extent "nonstatutory review" has been recognized at all to afford judicial review of Executive action, it is truly a very limited line of authority with no applicability to the present situation. *See, e.g.*, *Trudeau v. F.T.C.*, 456 F.3d 178, 190 (D.C. Cir. 2009) ("There certainly is no question that nonstatutory review 'is intended to be extremely limited in scope.'" (quoting *Griffith v. F.L.R.A.*, 842 F.2d 487, 493 (D.C. Cir. 1988)); 14 Charles Alan Wright & Arthur R.

---

[9] "Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), 'the court must first examine the Rule 12(b)(1) challenges' because a dismissal for lack of subject matter jurisdiction renders 'the [other] accompanying defenses and objections [ ] moot[.]'" *Cofield v. United States*, 64 F. Supp. 3d 206, 211 (D.D.C. 2014) (quoting *Schmidt v. U.S. Capitol Police Bd.*, 826 F.Supp.2d 59, 64 (D.D.C.2011) (citation and quotations omitted)); *see also Nat'l Fed'n of the Blind v. Spellings*, 562 F. Supp. 2d 74, 79 (D.D.C. 2008).

[10] To the extent Plaintiff relies on *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1973) ("*NTEU v. Nixon*") to justify nonstatutory review, such reliance is misplaced because in that case, the plaintiff asserted – and the D.C. Circuit founded its jurisdiction on – 28 U.S.C. § 1361, which provides federal district courts with original jurisdiction to hear cases for mandamus. *Id.* at 615. Because Plaintiff has not asserted a claim for mandamus relief, *NTEU v. Nixon* is entirely inapposite.

Miller, Federal Practice and Procedure § 3655 (4th ed. April 2016 Update) (noting that Supreme Court has recognized that "a federal court with subject matter jurisdiction may review Government wrongdoing in a lawsuit seeking injunctive or declaratory relief against a federal officer, even when a statute does not authorize such review" only in certain "exceptional categories").

In *Larson v. Domestic & Foreign Commerce Corp.*, the Supreme Court held that a suit against a federal officer in his official capacity was a suit against the United States and was thus barred by sovereign immunity.  337 U.S. 682, 695, 703 (1949).  In *dicta*, the Court noted that "[t]here may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign" and not barred by sovereign immunity. *Id.* at 689.  Included in the examples it provided was "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions.  The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden.  His actions are *ultra vires* his authority and therefore may be made the object of specific relief." *Id.*  In such cases, "the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power.  A claim of error in the exercise of that power is therefore not sufficient." *Id.* at 690.  *See also Dugan v. Rank*, 372 U.S. 609 (1963); *Leedom v. Kyne*, 358 U.S. 184, 190 (1958) ("'If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.'" (quoting *Switchmen's Un. of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943))..

Thus, in the very few cases where courts have permitted cases to be heard on the basis of

"nonstatutory review," that review has been founded on two theories: (1) the sovereign has not empowered its agents to act *ultra vires* or in violation of the constitution, *Larson*, 337 U.S. at 689; and (2) Congress intends the courts to enforce the rights and prohibitions it creates, *Leedom*, 358 U.S. at 190.  Thus, before a court will entertain non-statutory review, it must be convinced that the alleged action was *ultra vires*, which requires a strong showing that Congress specifically intended the action in question to be prohibited.  *Hunter v. F.E.R.C.*, 569 F.Supp.2d 12, 16 (D.D.C. 2008) ("Courts will exercise their power to review alleged ultra vires agency action when an agency 'patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute.'") (quoting *Griffith*, 842 F.2d at 493).  Because no such showing has been made here, Plaintiff's claim fails.

Plaintiff has not alleged any acts at all by the OWHC Defendants that violate a statute. First, FOIA places no affirmative obligation on the OWHC nor any prohibition on its review of potentially responsive records.  *See* 5 U.S.C. § 552.  As explained *supra*, courts have understood the FOIA statute to contemplate interagency review, including with the White House. Additionally, well-established precedent holding that a delay beyond the statutory timeline does not create a judicially-enforceable right to the absence of delay in processing FOIA requests but merely permits a requester to go to court precludes finding that the act by the OWHC Defendants to which Plaintiff's point – "requir[ing] federal agencies to delay production of documents past statutory deadlines" – is "*ultra vires*" of a statute.  *See supra* 13-14 (citing *CREW*, 711 F.3d at 189-90 ("penalty" for agency's nonadherence to FOIA's timelines "is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."), and *EPIC*, 15 F. Supp.3d at 41 ("*CREW* makes clear that the impact of blowing the 20-day deadline relates only to the requestor's ability to get into court.")).  Accordingly, because Plaintiff has neither

identified an *ultra vires* action nor evidence that Congress specifically intended the act in question to be prohibited, Plaintiff's claim does not fit within the narrow space in which courts have allowed nonstatutory review.  *See Larson*, 337 U.S. at 689; *Leedom*, 358 U.S. at 190.

Moreover, the alleged factual basis for Plaintiff's theory – that the Craig Memo requires federal agencies to "delay production of request past statutory deadlines" – bears no relationship to the actual text of that memorandum.  *See* Compl., Ex. 1 (asking Executive Branch agencies to "consult with the White House Counsel's Office on all document requests that may involve documents with White House equities . . . well in advance of the deadline for responding").  Nor has Plaintiff alleged facts demonstrating that the Craig Memo has actually been the cause of any delay, or that these defendants are "enforcing the Craig Memo" at all, let alone in a way that "delays production of documents timely under FOIA."  Compl. ¶ 100.

For this reason, Plaintiff's claim additionally cannot survive because Plaintiff has failed to allege the causation necessary to establish standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (holding that the "'irreducible constitutional minimum of standing' contains three requirements" – (1) injury in fact; (2) causation; and (3) redressability – and "the party invoking federal jurisdiction bears the burden of establishing its existence").  And when standing is lacking, a court is constitutionally obligated to dismiss the claim.  *Id.* at 101.

With respect to injury, Plaintiff does not even attempt to allege that twelve of the thirteen outstanding FOIA requests at issue in this case involved OWHC consultation at all, *see* Compl. ¶ 69 (alleging "at least one" acknowledgment letter mentions the need for "inter-agency" consultation, but failing to allege that any mention a need for OWHC consultation), accordingly, plaintiff fails to satisfy the most basic requirement of establishing injury.  With respect to the

single request at issue for which Plaintiff actually alleges that consultation occurred – the August 6, 2013 request to HHS – nothing in the Complaint establishes that the consultation resulted in any delays whatsoever in the processing of that request.  *See* Compl. Ex. 38 (Feb. 5, 2014 email from Gemma Flamberg, HHS to Jessica Leinwand, OWHC); Compl. ¶ 61, 87.  Because Plaintiff has failed to allege a concrete and particular injury that is either ongoing or imminent, Plaintiff has thus failed to demonstrate injury in fact for prospective injunctive relief.  *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

Nor has Plaintiff met is burden of establishing causation, for it has failed to assert facts alleging that OWHC consultation is responsible for the asserted delays in FOIA request processing that comprise Plaintiff's alleged injury.  The only evidence alleged that establishes any OWHC involvement at all with Plaintiff's outstanding FOIA requests is a single email from HHS to OWHC, *see* Compl. Ex. 38, but this email fails to establish that the consultation that occurred with regard to this FOIA request was the cause of any delay whatsoever: it merely demonstrates that HHS alerted the OWHC of a pending FOIA request.  The Complaint contains neither factual allegations nor speculation regarding any actions taken by the OWHC in response to this email, nor does the email establish anything about the status of HHS's processing of the FOIA request at the time the email was sent.  And Plaintiff has failed to otherwise allege that the Craig Memo's request for "consultation . . . well in advance of the deadline for responding" to document requests has actually been the cause of delays of any length in agencies' responses to FOIA requests.[11]  Because delay forms the basis of Plaintiff's claim, and the Complaint fails to

---

[11] *See, e.g.*, Compl. ¶¶ 62-63 (describing "several other pending requests that have been delayed more than a year, in whole or in part, at the insistence of the White House," but failing to allege facts tending to show that the OWHC was consulted on any of these requests); ¶ 39 (describing Exhibits 5-10 as indicative that various FOIA requests involving OWHC consultation involved matters of interest to the White House but failing to allege facts showing that OWHC

*(footnote continued on next page)*

establish that OWHC's conduct has caused any delay, this claim fails. [12] *See Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) (finding no causation for standing where plaintiff claimed financial injury imposed by new arrivals of immigrants due to the certain Executive branch policies but could not establish that the policies – which only applied to immigrants entering prior to January 1, 2010 – affected new arrivals).

Finally, to the extent the exceptional doctrine of "nonstatutory review" is even available over a claim that fails to identify an *ultra vires* act or a Congressional prohibition on the act in question, such review is not available when an alternate remedy exists for the claimed injury. As the Supreme Court underscored in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43-44 (1991), an *ultra vires* challenge may proceed only if the lack of judicial review "would wholly deprive the [injured party] of a meaningful and adequate means of vindicating its statutory rights." This conclusion is compelled by the "well-established principle that, in most contexts, 'a precisely drawn, detailed statute pre-empts more general remedies,'" such that "when Congress enacts a specific remedy when no remedy was previously

---

consultation caused any delays); Compl. ¶ 42 (describing OWHC consultation regarding FOIA requests seeking documents related to the 2010 Western Regions Conference website and contents but failing to allege facts showing that OWHC consultation caused any delays).

[12] It is not unusual for the elements of causation and redressability to be closely linked, *see Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997), and this case is no different. Because Plaintiff has not adequately alleged a causal relationship between the Craig Memo and Plaintiff's purported injury, issuing an injunction against the OWHC vacating the Craig Memo will not remedy that purported injury. Because in order to be redressed, Plaintiff's alleged injury – delays in the processing of FOIA requests by the Agency Defendants – depends upon the agencies' processing of the requests – including the agencies' decisions to consult with the White House on documents responsive to those requests – enjoining the OWHC Defendants will not redress Plaintiff's injury. Not having shown traceability or redressability, Plaintiff thus lacks standing to bring its claim against the OWHC Defendants, and Count III should be dismissed. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Ed.*, 366 F.3d 930, 936-37 (D.C. Cir. 2004) (finding that plaintiffs lacked redressability because the direct cause of the alleged injury was administrative decisions made by numerous school districts, not the challenged guidance issued by the Department of Education).

recognized . . . the remedy provided is generally regarded as exclusive." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (quoting *Brown v. GSA*, 425 U.S. 820, 834 (1976)); *see also Wise v. Glickman*, 257 F.Supp.2d 123, 127 n.1 (D.D.C. 2003) ("Non-statutory review actions may be proper only when 'a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision.'") (quoting *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996)). *Contra Reich*, 74 F.3d 1322 (allowing nonstatutory review where plaintiffs identified invasion of legally protected right for which no statutory remedy existed).

Because the FOIA provides a statutory remedy for plaintiff's alleged injury, this court has no reason to expand the exceptionally narrow doctrine of nonstatutory review to this case.   The FOIA's clearly defined statutory mechanism for enforcing the rights it creates is the same mechanism, in fact, under which Plaintiff brings its claim in Count I against the Agency Defendants.   Rather than limiting themselves to the relief mechanism Congress has provided, Plaintiff seeks to use the doctrine of nonstatutory review to upend the "carefully balanced scheme of public rights and agency obligations" that was established in FOIA, *Kissinger*, 445 U.S. at 150, and asks this Court to fashion new forms of relief, other than the remedies Congress provided for the very same alleged injury.   This is emphatically not the purpose of the doctrine of nonstatutory review, and would constitute an extreme departure from the doctrine.   For all of these reasons, this court should dismiss Count III.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Count I, to the extent it alleges a pattern and practice claim, Count II, and Count III of the Complaint.

Dated:  July 15, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director
Civil Division, Federal Programs Branch

/s/ Julie Straus Harris
JULIE STRAUS HARRIS (DC Bar # 1021928)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 6140
Washington, D.C. 20530
Tel: (202) 353-7633
Fax: (202) 616-8460
E-mail: julie.strausharris@usdoj.gov

*Counsel for Defendants*