**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAUSE OF ACTION INSTITUTE,
      Plaintiff,

    v.

W. NEIL EGGLESTON, *et al.*,
      Defendants

Civil Action No. 16-871 (CKK)

**MEMORANDUM OPINION**
(December 15, 2016)

This case arises from several Freedom of Information Act ("FOIA") requests Plaintiff has made to various executive agencies that, Plaintiff alleges, have been delayed as a result of agency consultation with the Office of White House Counsel ("OWHC"). Plaintiff alleges that this delay is caused by agencies complying with a memorandum issued by the OWHC in 2009 that calls for consultation with the OWHC on FOIA requests that implicate "White House equities." Plaintiff claims that such consultation is unnecessary and engaged in to delay politically sensitive or embarrassing FOIA requests.

Presently before the Court is Defendants' [16] Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' motion. The Court dismisses, without prejudice, Plaintiff's FOIA claim to the

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Compl. for Declaratory and Injunctive Relief ("Compl."), ECF No. 1;
- Defs.' Mem. in Support of Partial Mot. to Dismiss ("Defs.' Mem."), ECF No. 16-1;
- Pl.'s Mem. in Opp'n to Defs.' Partial Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 17; and
- Defs.' Reply in Support of Defs.' Partial Mot. to Dismiss ("Defs.' Reply"), ECF No. 19.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

extent that it includes a "policy or practice" claim under *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). Plaintiff has not pled sufficient facts that establish that the agencies at issue have pursued a policy of violating FOIA that would be actionable under *Payne Enterprises*. Plaintiff's FOIA claim is not dismissed to the extent that it seeks the documents requested in the FOIA requests at issue. The Court also dismisses Plaintiff's Administrative Procedure Act ("APA") claim for lack of subject matter jurisdiction. The APA does not provide a waiver of sovereign immunity in this case because an adequate remedy for the conduct about which Plaintiff complains is available under FOIA. Finally, the Court also dismisses Plaintiff's claim for non-statutory review of *ultra vires* action for lack of subject matter jurisdiction. The Court does not have jurisdiction under this narrow doctrine because FOIA provides an adequate alternative remedy and because Plaintiff has not pled the type of unlawful conduct that warrants non-statutory review.

## I. BACKGROUND

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

### A.  The Parties

Plaintiff Cause of Action Institute is a nonprofit organization that files dozens of FOIA requests each year seeking access to various government records. Compl. ¶ 1. Defendants in this case include various executive agencies to whom Plaintiff has submitted FOIA requests, including: the Department of Health and Human Services ("HHS"), the Internal Revenue Service ("IRS"), the United States Department of Homeland Security ("DHS"), the United States

Department of Defense ("DOD"), the United States Department of Energy ("DOE"), the United

States Department of Justice ("DOJ"), the United States Department of State ("DOS"), the

Environmental Protection Agency ("EPA"), the United States Department of the Interior

("DOI"), the United States Department of the Treasury ("Treasury"), and the United States

Department of Transportation ("DOT") (collectively, "Agency Defendants"). *Id.* ¶ 14.

Defendants also include the OWHC and White House Counsel W. Neil Eggleston (collectively,

"OWHC Defendants"). *Id.* ¶¶ 12-13.

### B.  Plaintiff's FOIA Requests

At issue in this case are several FOIA requests made by Plaintiff to the Agency

Defendants since August 2013.  First, on August 6, 2013, Plaintiff submitted a FOIA request to

HHS requesting the "work calendars of the Secretary, Deputy Secretary, and Chief of Staff." *Id.*

¶ 61.  Shortly thereafter, Plaintiff made two additional FOIA requests to HHS seeking records

related to "Early Innovator Grants" awarded by HHS, and records related to incidents of

unauthorized disclosure of "Personally Identifiable Information" by health insurance exchanges.

*Id.* ¶ 62.

Next, on June 29, 2015, Plaintiff simultaneously sent similar FOIA requests to ten of the

Agency Defendants.  *Id.* ¶ 66.  Each of the requests sought:

a) "All travel records of [the agency head or heads] related to travel (1) on Air Force
   One, (2) with the President or Vice President, or (3) to or from meetings with the
   President or Vice President outside of Washington, D.C., from January 1, 2014 to
   the present";

b) "All work calendars of [the agency head or heads] related to meetings that (1)
   occurred at the White House or (2) included representatives of the Executive
   Office of the President, from January 1, 2014 to the present";

c) "All records of correspondence received by the Office of the Secretary or the
   Office of Congressional Relations from (1) Senator Barack Obama, or any
   member of Senator Obama's congressional staff, or (2) Senator Joseph Biden, or

> any member of Senator Biden's congressional staff, from January 3, 2005 to November 3, 2008."

*Id.* Plaintiff alleges that, at the time its complaint was filed, none of the Agency Defendants had provided Plaintiff with a final determination regarding these requests. *Id.* ¶ 71. Plaintiff claims that final determinations with respect to its requests have been delayed as a result of consultation between Agency Defendants and the OWHC. *Id.* ¶ 80.

### C. OWHC Review of FOIA Requests to Executive Agencies

The OWHC has a long history of consulting with executive agencies regarding FOIA requests.[2] OWHC intermittently issues new memoranda instructing executive agencies on the types of requests and records about which OWHC should be consulted. Beginning in 1988, the OWHC, pursuant to a memorandum issued by then-Assistant Attorney General Stephen J. Markman ("Markman Memorandum"), required agencies responding to FOIA requests to provide for OWHC review "[r]ecords originating with or involving the 'White House' Office."[3] The Markman Memorandum defined the term "White House Office" broadly to include "all offices over which the Office of the Chief of Staff directly presides" including, for example, the office of the First Lady. *Id.* at n.1. In 1992, the Markman Memorandum was superseded by a memorandum written by Steven R. Schlesinger of the DOJ Office of Policy Development

---

[2] In the following portion of this Memorandum Opinion, the Court references OWHC memoranda not expressly pled in Plaintiff's complaint. However, "[w]hen reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003). The Court may also take judicial notice of OWHC memoranda discussed herein pursuant to Federal Rule of Evidence 201. *See Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016) (public records are subject to judicial notice).

[3] Stephen J. Markman, *White House Records in Agency Files: Referrals and Consultations* (Sept. 1, 1988), *available at* http://causeofaction.org/assets/uploads/2014/04/1988-memo.pdf.

("Schlesinger Memorandum").[4]  The Schlesinger Memorandum, while refining the procedures to

be used by agencies in certain situations, by in large retained the Markman Memorandum's

structure as well as its broad definition of "White House Office."  *Id.*  In 1993, then-Associate

Attorney General Webster L. Hubbell issued a memorandum that superseded the Schlesinger

Memorandum ("Hubbell Memorandum").[5]  Under the Hubbell Memorandum, agencies were

required to consult with the OWHC when a FOIA request sought "White House-originated

records (or records containing White House-originated information)."  *Id.*

In 2009, White House Counsel Gregory Craig circulated a new memorandum ("Craig

Memorandum") regarding consultation with the OWHC on FOIA requests.  Compl., Ex. 1.  The

Craig Memorandum is quite brief and does not purport to supersede the Hubbell Memorandum.

*Id.*  It simply states that it is a "reminder that executive agencies should consult with the White

House Counsel's Office on all document requests that may involve documents with White House

equities."  *Id.*  The memorandum asks that "such consultation take place well in advance of the

deadline for responding."  *Id.*  The term "White House equities" is not defined in the Craig

Memorandum, but the memorandum states that it includes, at least, "all documents and records,

whether in oral, paper or electronic form, that relate to communications to and from the White

House."  *Id.*

Plaintiff alleges that "[b]ecause the term 'White House equities' is vague and undefined,

agency FOIA officers interpret it broadly, referring FOIA requests to White House review

whenever the subject matter might be of 'interest' to the White House."  *Id.* ¶ 39.  Plaintiff

---

[4] Steven R. Schlesinger, *White House Records in Agency Files: Referral and Consultations* (Jan. 28, 1992), *available at* http://causeofaction.org/assets/uploads/2014/04/1992-memo.pdf.
[5] Webster L. Hubbell, *Memorandum Regarding FOIA Consultation Procedures Required For Any White House-Originated Record or Information Found in Agency Files* (Nov. 3, 1993), *available at* https://www.justice.gov/oip/blog/foia-update-foia-memo-white-house-records.

alleges that, as a result, OWHC reviews requests in cases where such review does "not serve any legitimate FOIA purpose" and that this "review is directed in particular at FOIA requests that the administration finds politically sensitive or embarrassing." *Id.* ¶¶ 53, 55.  Accordingly, Plaintiff alleges that the Craig Memorandum "inappropriately delays final determinations and production of responsive documents until OWHC grants clearance." *Id.* ¶ 53.

### D.  Plaintiff's Claims in This Lawsuit

Plaintiff brought this lawsuit on May 9, 2016.  "The gravamen of the Complaint is that the White House cannot cause delay in producing the requested documents that is separate and apart from the delays caused by the normal FOIA process within the agencies."  Pl.'s Opp'n at 15 n.8.  Plaintiff asserts causes of action under the FOIA, APA and the Court's "authority to enjoin *ultra vires* actions by agents and organs of the federal government." *Id.* ¶¶ 75-101.  As relief, Plaintiff requests that the Court order Agency Defendants to make final determinations regarding Plaintiff's FOIA requests and produce the requested documents. *Id.* at 32.  Plaintiff also requests that the Court enjoin OWHC consultation on FOIA requests under the Craig Memorandum to the extent it causes any delay in the production of documents requested under FOIA. *Id.*  On July 15, 2016, Defendants moved for partial dismissal of Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C.2007) (citations omitted).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain sufficient *factual* allegations that, if true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *See In re United*

*Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

"That said, [the Court] accept[s] neither 'inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint,' nor 'legal conclusions cast in the form of

factual allegations.'" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Kowal*

*v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Finally, in deciding a Rule

12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as

exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's

complaint necessarily relies even if the document is produced not by the plaintiff in the

complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab.*

*Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

The Court will grant Defendants' motion to partially dismiss Plaintiff's complaint in

three respects: (A) the Court dismisses Plaintiff's FOIA cause of action to the extent it alleges a

"policy or practice" claim because Plaintiff has not plausibly alleged *facts* showing that

Defendants have followed a policy or practice of violating FOIA, beyond the fact that final

determinations of several of Plaintiff's FOIA requests are delayed; (B) the Court dismisses

Plaintiff's APA claim for lack of subject matter jurisdiction because an adequate alternative

remedy is available under FOIA and accordingly the APA does not provide a waiver of

sovereign immunity; and (C) the Court also dismisses Plaintiff's *ultra vires* claim for lack of

subject matter jurisdiction because FOIA provides an adequate alternative remedy and because

Plaintiff has not pled the type of unlawful conduct that warrants such non-statutory review.

### A. The Court Dismisses Plaintiff's "Policy or Practice" Claim Under FOIA For Failure to State a Claim

First, the Court will dismiss Plaintiff's FOIA claim to the extent that it alleges that Agency Defendants' compliance with the Craig Memorandum is a "policy or practice" of violating FOIA actionable under *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). In *Payne Enterprises*, officers of the Air Force Logistics Command had routinely refused to release records sought by plaintiff despite the fact that there was "no justification" for doing so, forcing plaintiff to repeatedly pursue "frustrating" and "costly" administrative appeals to obtain the records. *Id.* at 490, 494. Plaintiff filed suit to challenge this practice, but its case was dismissed as moot because plaintiff had eventually "received all of the material it had requested." *Id.* at 488. The D.C. Circuit reversed, holding that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491. Accordingly, if adequately pled, a "policy or practice" claim under *Payne Enterprises* represents an exception to the general rule that a "plaintiff's specific claim regarding a FOIA request is moot [once] the requested documents have been released." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 228 (D.D.C. 2011).

"To state a claim for relief under the 'policy or practice' doctrine articulated in *Payne* . . . a plaintiff must allege, *inter alia*, facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enterprises,* 837 F.2d at 491). Here, Plaintiff alleges that Agency Defendants have engaged in an unlawful policy or practice of "submitting politically sensitive FOIA productions to the [OWHC] for pre-production review, even when no applicable FOIA exemption or recognized

interest justifies White House involvement."  Pl.'s Opp'n at 12.  Plaintiff alleges that this is done

to delay requests for "politically sensitive or embarrassing" records.  Compl. ¶ 55.

The Court finds that Plaintiff's allegations are insufficient to state a claim for such a

"policy or practice."  The Court begins by noting that Plaintiff's Complaint is largely reliant on

allegations, newspaper articles and emails regarding FOIA requests that are not at issue in this

case, many of which appear to have been made by other groups or individuals.  To have standing

to challenge an alleged "policy or practice," a plaintiff must allege that *it* was subject to the

practice challenged.  *See Nat'l Sec. Counselors v. C.I.A.*, 931 F. Supp. 2d 77, 92 (D.D.C. 2013)

("even assuming that an alleged policy or practice exists and some FOIA requesters may have

been subject to that policy, FOIA plaintiffs must establish that they have personally been subject

to the alleged policy to have standing to challenge it."); *Quick v. U.S. Dep't of Commerce, Nat.

Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 187 (D.D.C. 2011) ("even assuming that

individuals other than Quick may have been subject to the alleged 'pattern or practice,' the

record is clear that Quick was not.  That being the case, Quick lacks standing to pursue such a

claim in this action.").  Accordingly, the Court must focus its attention on Plaintiff's allegations

of a policy or practice of violating FOIA with regard to the FOIA requests submitted by Plaintiff

actually at issue in this case.

With regard to these requests, Plaintiff falls short of pleading any "policy or practice" of

violating FOIA under *Payne Enterprises*.  First, of the various FOIA requests at issue in this

case, Plaintiff only alleges facts showing that one has been sent to the OWHC for review at all.

With respect to all of Plaintiff's other requests that are at issue, Plaintiff concedes that it is

possible that "Agency Defendants are delaying for reasons having nothing to do with the Craig

Memo[random] and have not sought to consult with the White House on any documents."

Compl. ¶ 81.  Plaintiff cannot state a "policy or practice" claim based on a single incident.  *See*

*Swan View Coal. v. Dep't of Agric.*, 39 F. Supp. 2d 42, 46 (D.D.C. 1999) (noting that a policy or

practice claim is alleged when "plaintiff challenges not just an isolated action").

Second, unlike the plaintiff in *Payne Enterprises*, Plaintiff does not allege that the

Agency Defendants have decided, even initially, to not produce any records that should be

produced.  Plaintiff merely alleges that the Agency Defendants' responses to its requests have

been *delayed*.  This distinction is significant.  "[R]ecogniz[ing] that agencies may not always be

able to adhere to the timelines," the D.C. Circuit has held that the only "penalty" for delay is

"that the agency cannot rely on the administrative exhaustion requirement to keep cases from

getting into court."  *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*,

711 F.3d 180, 189 (D.C. Cir. 2013).

Accordingly, delay alone, even repeated delay, is not the type of illegal policy or practice

that is actionable under *Payne Enterprises*.  *See Judicial Watch, Inc. v. U.S. Dep't of Homeland*

*Sec.*, No. 15-1983, 2016 WL 5660233, at *3 (D.D.C. Sept. 29, 2016) (policy or practice claims

involve "more egregious, intentional agency conduct than mere delay"); *Del Monte Fresh*

*Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) ("*Payne Enterprises*

regards the repeated denial of Freedom of Information requests based on invocation of

inapplicable statutory exemptions rather than the delay of an action over which the agency had

discretion."); *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, No. 15-CV-0127-WJM-CBS, 2016

WL 362459, at *11 (D. Colo. Jan. 29, 2016) (granting summary judgment to agency on policy or

practice claim because "a failure to make a 'determination' within 20 days—even a repeated

failure—already contains a statutory remedy: the right to sue.  It is not properly comparable to

the behavior exhibited in . . . *Payne*, where the agencies continually and intentionally invoked

spurious reasons for nondisclosure"). The Court finds that Plaintiff must plead something more than a mere failure to meet statutory deadlines to move forward on its policy or practice claim.

Finally, with regard to Plaintiff's attempt to plead something more than mere delay, the Court is not required to, and does not, accept Plaintiff's conclusory and unsupported allegation that its requests have been delayed for illicit purposes and not as a result of legitimate efforts to review requested records. Plaintiff does not dispute that some degree of OWHC review of FOIA requests is acceptable. Pl.'s Opp'n at 18 (Plaintiff "does not suggest that White House consultation is *per se* unavailable under FOIA"); *id.* at 21 (FOIA "should not be interpreted so literally as to preclude White House review"). To the contrary, Plaintiff acknowledges that "the President may require that agencies . . . keep him informed of FOIA requests directed to them," that "[t]he President may also require that agencies consult about production of White House documents or documents over which the President has statutory responsibility," and that "[t]he President may even require agency consultation more broadly." Compl. ¶ 8. Plaintiff additionally acknowledges that there are various FOIA exemptions that "relate specifically to Presidential determinations or records," Pl.'s Opp'n at 5, including 5 U.S.C. § 552(b)(1), which relates to records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," and § 552(b)(5), which relates to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." Plaintiff even concedes that the White House can "direct consultation in violation of statutory deadlines" so long as it is "vital to the application of a presidential privilege." Pl.'s Opp'n at 19-20, n.11.

Plaintiff is clearly correct to concede that White House consultation is not "*per se*" unlawful or unnecessary. Indeed, as one example, White House consultation may be necessary

to determine the applicability of FOIA Exemption 5, because that exemption "incorporate[s] the presidential communications privilege," and therefore its applicability depends in part on whether the "'President believes [a document] should remain confidential.'" *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)). In light of this concession that OWHC review is not "*per se*" unlawful, Plaintiff's claim that the delays in this case are actionable is quite narrow. It is dependent not only on the allegation that the delays in this case are caused by OWHC review, but also on the allegation that such review is unlawful under the circumstances because it is "unnecessary," Compl. ¶ 80, and merely used to "control[ ] political messages and avoid[ ] political embarrassment," Pl.'s Opp'n at 19.

This latter allegation, however, is conclusory and unsupported by the facts alleged. Instead of supporting it with factual allegations, Plaintiff asks the Court to accept this claim based on legal conclusions and inferences drawn from the nature of Plaintiff's FOIA requests and past instances of OWHC review. But the Court does not accept as true legal conclusions or "inferences drawn by plaintiffs" where, as here, "such inferences are unsupported by the facts set out in the complaint." *Browning*, 292 F.3d at 242 (quoting *Kowal*, 16 F.3d at 1276).

The Court finds that the FOIA requests at issue in this case, and the past instances of OWHC review documented in Plaintiff's exhibits, do not support Plaintiff's conclusory allegation that the OWHC engages in "unnecessary" or politically-motivated review of FOIA requests. To the contrary, the Court finds that the FOIA requests OWHC has allegedly reviewed plausibly implicate records that either come from the White House or could reasonably call for White House input to determine the applicability of FOIA exemptions. For example, a number of the requests explicitly implicate White House records or correspondence, which even Plaintiff

concedes makes OWHC review reasonable. *See, e.g.*, Compl., Ex. 7 (sending "a collection of letters that the WH wrote"); *id.* Ex. 8 (giving notice of a release of "joint DOI-White House records"); *id.*, Ex. 24 (forwarding a "White House memo"); *id.*, Ex. 27 (forwarding materials including e-mails that originated with individuals who "are currently with the White House").

Other FOIA requests that have been sent to the OWHC for consultation, as well as Plaintiff's own requests, implicate the travel plans or meetings of the President, Vice President, First Lady or White House staff. *See, e.g., id.* ¶ 66 (requesting travel records related to "travel on Air Force One" or "with the President or Vice President"); *id.*, Ex. 9 (forwarding an invitation to a meeting of the Domestic Policy Council, which coordinates the domestic policy-making process in the White House); *id.*, Ex. 25 (discussing request related to "the First Lady's trip to Spain"). Still others, again including Plaintiff's requests, involve calendars or travel records for Cabinet members. *Id.* ¶ 66 (requesting "[a]ll work calendars" of agency heads "related to meetings that occurred at the White House"); *id.*, Ex. 17 (forwarding request related to "Secretary Chu's travel on Air Force One"); *id.*, Ex. 19 ("WH Counsel has asked that all FOIA's related to Cabinet members' schedules/travel be sent to their office . . . for review prior to release due to WH meetings, calls, etc."). Defendant argues, and the Court finds reasonable, that the OWHC seeks to be consulted on these requests because the records requested could reference White House meetings and therefore potentially contain communications protected by the executive privilege, which extends to "key White House advisers in the Office of the President and their staff." *Judicial Watch*, 365 F.3d at 1116.

Having reviewed all of the *facts* alleged, including the sixty-five exhibits attached to Plaintiff's Complaint, the Court finds no factual support for Plaintiff's conclusions that OWHC review has been used as a politically-driven delay tactic divorced from legitimate review. The

requests are not nearly so far removed from legitimate reasons the White House might have to

review FOIA requests to support this conclusion.  Even if the OWHC has been consulted with on

FOIA requests that, as it turned out, did not in fact implicate White House records or records that

were protected by an executive-related FOIA exemption, the focus of the "policy or practice"

doctrine is conduct that is "*wholly unjustified*."  *Payne Enterprises*, 837 F.2d at 489 (emphasis

added).  Plaintiff falls far short of alleging that OWHC's mere review of the requests to

determine *whether* they might implicate such records is so "unnecessary" as to be "wholly

unjustified."  *Id.*

Accordingly, the Court DISMISSES Plaintiff's FOIA claim to the extent that it alleges a

"policy or practice" claim under *Payne Enterprises*, WITHOUT PREJUDICE.  Plaintiff has not

pled facts supporting its claim that Agency Defendants are engaged in a practice of delaying

Plaintiff's FOIA requests by sending them to the OWHC for unnecessary or otherwise

inappropriate review.  Plaintiff has pled that Agency Defendants' responses to its FOIA requests

are delayed, but delay alone is insufficient.

### B.  The Court Dismisses Plaintiff's APA Claim For Lack Of Subject Matter Jurisdiction

Next, the Court dismisses Plaintiff's claim under the APA for lack of subject matter

jurisdiction.  "'[A] plaintiff must overcome the defense of sovereign immunity in order to

establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss.'"  *Stone v.*

*Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012) (quoting *Jackson v. Bush,* 448 F. Supp. 2d 198,

200 (D.D.C. 2006)).  The APA waives sovereign immunity for certain claims against the

Government, but "there is no waiver of sovereign immunity where [plaintiffs] have an adequate

alternative remedy in court."  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930,

947 (D.C. Cir. 2004); *see also* 5 U.S.C. § 704 ("[a]gency action made reviewable by statute and

final agency action for which there is *no other adequate remedy* in a court are subject to judicial review" under the APA) (emphasis added).  In particular, "[w]here a statute affords an opportunity for *de novo* district-court review," APA review is "precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA.'"  *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (quoting *Envtl. Def. Fund v. Reilly*, 909 F.2d 1497, 1501 (D.C. Cir. 1990)).  Although courts analyzing the adequacy of an alternative remedy "must give the APA a hospitable interpretation," *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz*, 396 F.3d at 1272) (internal quotation marks omitted), dismissal for lack of subject matter jurisdiction is required where relief of the "same genre" as the relief sought under the APA is available to plaintiff, *El Rio Santa Cruz*, 396 F.3d at 1272.

In this case, the relief Plaintiff seeks under the APA—preventing Agency Defendants from complying with the Craig Memorandum and accordingly delaying FOIA productions—is available under FOIA.  Indeed, Plaintiff itself has asked for that same relief under the FOIA count in its Complaint.  Compl. ¶ 83 ("This Court should use its authority to enjoin agency practices and procedures that violate the mandates of FOIA and order the prompt production of all documents delayed by White House review.").  FOIA provides an avenue for Plaintiff to complain of delayed determinations, and, as discussed above, FOIA also provides an avenue for Plaintiff to challenge policies or practices regarding FOIA compliance.  *Payne Enterprises*, 837 F.2d at 491.

Courts in this circuit have "have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA," including the equitable power of courts described in

*Payne Enterprises.  Feinman v. FBI*, 713 F. Supp. 2d 70, 76-77 (D.D.C. 2010); *see also Harvey v. Lynch*, 123 F. Supp. 3d 3, 7-8 (D.D.C. 2015) (holding that the court lacked jurisdiction over an APA claim because it was "predicated on [an agency's] failure to comply with FOIA deadlines" for which there is a remedy under FOIA); *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011) ("APA claims arising out of an agency's response to a FOIA request must be dismissed when they seek relief that can be obtained through a FOIA claim itself."); *Muttitt*, 813 F. Supp. 2d at 229 ("APA relief is foreclosed here because the Court concludes that in this case—where a plaintiff challenges an alleged pattern and practice of violating procedural requirements of FOIA in connection with the processing of the plaintiff's FOIA requests—the Court has the power under FOIA and *Payne* to provide the requested declaratory and injunctive remedies.").

Plaintiff seeks to avoid this result by advancing two arguments, neither of which the Court finds persuasive.  First, Plaintiff argues that it cannot obtain complete relief under FOIA because compliance with the Craig Memorandum may constitute a violation of certain FOIA regulations promulgated by Agency Defendants, and FOIA review "does not cover agency violation of" such regulations.  Pl.'s Opp'n at 24-26.  Although Plaintiff expounds on this argument at length in its Opposition, the Complaint is completely devoid of any allegation that any Agency Defendant has violated their own FOIA regulations by coordinating with the OWHC regarding FOIA requests.  As such, Agency Defendants' alleged violations of their own FOIA regulations are not properly before the Court.

Second, Plaintiff argues that its APA claim is related to a "peripheral practice unconnected to the disclosure of documents" and therefore "may be pursued under the APA rather than under FOIA itself."  Pl.'s Opp'n at 26 (quoting Defs.' Mem. at 25).  Both parties

agree that some FOIA actions that are "outside the scope of § 552(a)(4)(B)" can be reviewed under the APA. *Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 9 (D.D.C. 2000). This is not, however, such an action. The policy or practice of consulting with OWHC on particular FOIA requests which results in a delay of the disclosure of the requested documents is not a "peripheral practice unconnected to the disclosure of documents." Pl.'s Opp'n at 26. It is fundamentally connected to such disclosure. The cases cited by Plaintiff on this point are inapposite. The Court considers the alleged practice complained of here far more central to the "disclosure of documents" sought by Plaintiff than an agency's "determination of which information systems qualify as major," which was the practice at issue in *Pub. Citizen, Inc.*, 127 F. Supp. 2d at 8. Moreover, the court in *Reliance Electric Co. v. Consumer Prod. Safety Comm'n*, 924 F.2d 274 (D.C. Cir. 1991) merely held that judicial review of an agency's decision to release information in a "reverse-FOIA action" is pursuant to the APA. *Id.* at 277. This is not a "reverse-FOIA action." *Id.*

    In sum, an adequate alternative remedy is available under FOIA with respect to all of the relief Plaintiff seeks in its APA claim, and therefore the APA does not provide a waiver of Defendants' sovereign immunity. The Court accordingly DISMISSES Plaintiff's APA claim for lack of subject matter jurisdiction.

### C.  The Court Dismisses Plaintiff's *Ultra Vires* Claim For Lack Of Subject Matter Jurisdiction

    Finally, the Court also grants Defendants' motion to dismiss Plaintiff's *ultra vires* claim for lack of subject matter jurisdiction. The doctrine of non-statutory review of *ultra vires* actions allows a plaintiff in certain limited circumstances to challenge government action in court even if the "plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir.

1996).  Sovereign immunity is not a bar to such a claim because "sovereign immunity does not bar a suit challenging the actions of a federal officer who has acted in excess of his legal authority."  *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 24 (D.D.C. 2005). However, it is well-settled that this doctrine is narrow: "[t]here certainly is no question that nonstatutory review 'is intended to be of extremely limited scope.'"  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006) (quoting *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988)); *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007) ("Non-statutory review is a doctrine of last resort").

Plaintiff's claim fails to fit within this narrow doctrine.  First, Plaintiff's claim fails because Plaintiff has not alleged that OWHC Defendants have taken any action that is clearly and completely outside of their authority or in violation of any statute.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) (a suit against an executive officer is not barred as a suit against the sovereign if "[t]he officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden.").  Under the doctrine of non-statutory review, an "officer may be said to act *ultra vires* only when he acts 'without any authority whatever.'"  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697 (1982)).  Here, Plaintiff alleges that OWHC Defendants have issued a memorandum that "remind[s] . . . executive agencies [to] consult with the White House Counsel's Office on all document requests that may involve documents with White House equities," and asks that "such consultation take place well in advance of the deadline for responding."  Compl., Ex. 1.  Plaintiff does not allege that OWHC Defendants have *no authority* to review FOIA requests made to federal agencies, or to issue memoranda regarding the same.

In fact, Plaintiff concedes that "White House consultation is [not] *per se* unavailable under FOIA," Pl.'s Opp'n at 18, and that, at least under certain circumstances, the White House can even "direct consultation in violation of statutory deadlines," *id.* at 19-20, n.11.

Accordingly, even though Plaintiff claims that OWHC has used this authority erroneously or inappropriately, and that "[a]mbiguities in FOIA, in this respect, should be construed against Defendants," *id.*, this is simply not the sort of completely unauthorized or illegal conduct that would allow the Court to engage in *ultra vires* review.  *See Florida Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016) (holding that plaintiff could not challenge agency action on the ground that it was *ultra vires* because disagreement over appropriateness of action was insufficient to demonstrate an "obvious" or "patent violation of agency authority"); *Royster-Clark*, 391 F. Supp. 2d at 24 (because *ultra vires* claims are based on "'the officer's lack of delegated power," a mere "claim of error in the exercise of that power is . . . not sufficient.") (quoting *Larson*, 337 U.S. at 690).

Moreover, even if such conduct were reviewable under the non-statutory review doctrine, such review would nonetheless be inappropriate here because Plaintiff has not adequately alleged such conduct.  *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 166, AFL-CIO v. Griffin*, 590 F. Supp. 2d 171, 174-80 (D.D.C. 2008) ("The scarcity of factual support is especially problematic where, as here, Plaintiffs seek non-statutory review, because the Court cannot find, based on this sole conclusory allegation, that NASA implemented a 'policy and practice' that represents such an extreme error as to warrant non-statutory review."); *Texas All. for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 94 (D.D.C. 2011), *aff'd,* 681 F.3d 402 (D.C. Cir. 2012) (declining to conduct *ultra vires* review where "plaintiffs' allegations of *ultra vires* action" were "conclusory" and based on unsupported inferences).  As discussed *supra* §

III.A, the aspect of OWHC review that Plaintiff claims is inappropriate—that it is unnecessary and engaged in to delay FOIA requests for political reasons—is pled with only conclusory statements and unfounded inferences.

Finally, to the extent that Plaintiff's *ultra vires* claim against OWHC Defendants is premised on Agency Defendants' delays in responding to Plaintiff's FOIA requests, Compl. ¶ 97 (alleging that OWHC Defendants "have no authority to require federal agencies to delay production of documents past statutory deadlines"), this claim fails for a number of reasons. First, FOIA places no obligation on OWHC Defendants with respect to deadlines for responding to FOIA requests made to Agency Defendants.  Second, the Court notes that Plaintiff's claim that OWHC Defendants "require federal agencies to delay production," *id.*, is expressly contradicted by the Craig Memorandum upon which Plaintiff's claim is based.  The Craig Memorandum does not require delay, and in fact requests consultation occur "well in advance of the deadline for responding."  Compl., Ex. 1.  Finally, even if Plaintiff had alleged that OWHC Defendants were somehow violating Agency Defendants' FOIA deadlines, Plaintiff's *ultra vires* claim would have to be dismissed because Plaintiff has "a meaningful and adequate opportunity for judicial review of the validity of" this action.  *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 43 (1991); *Wise v. Glickman*, 257 F. Supp. 2d 123, 127 n.1 (D.D.C. 2003) ("Non-statutory review actions may be proper only when a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision.") (citation and internal quotation omitted); *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007) ("The doctrine does not apply in a case such as this one, where the injury the plaintiff alleges may be fully remedied under a statutorily provided cause of action").  For the reasons described

above, *supra* § III.B, the Court has already determined that FOIA provides Plaintiff with an adequate alternative opportunity for judicial review of delays in responding to FOIA requests.

Plaintiff's arguments to the contrary are speculative and unpersuasive.  Plaintiff claims that review under FOIA is an insufficient alternative because OWHC Defendants could evade a FOIA remedy by issuing a *different* memorandum in the future, or by continuing to apply the Craig Memorandum to *different* agencies who are not a party to this lawsuit.  Pl.'s Opp'n at 32. These issues do not alter the Court's conclusion because they are not before the Court in this case.  It is sufficient to say that there is a meaningful opportunity for review and redress of the harm Plaintiff actually alleges it suffers in this case—delays in responses to FOIA requests made to the Agency Defendants based on OWHC review pursuant to the Craig Memorandum.  To the extent the eventualities about which Plaintiff is concerned come to pass, Plaintiff could bring additional suits under FOIA to challenge new practices and resulting delays.  *Accord Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (holding in analogous context that "situation-specific litigation affords an adequate, even if imperfect, remedy.").

In sum, the Court DISMISSES Plaintiff's claim for non-statutory review of *ultra vires* action.  The Court does not have jurisdiction under this doctrine because Plaintiff does not allege that Defendants acted without any authority at all in reviewing agency FOIA requests, and, with regard to the only statutory provision Plaintiff references in this claim, Plaintiff has a meaningful and adequate alternative opportunity for review.[6]

---

[6] Because the Court determines that it lacks subject matter jurisdiction over Plaintiff's *ultra vires* claim due to Defendants' sovereign immunity, it does not reach Plaintiff's other arguments for dismissing the claim, including that the Court lacks subject matter jurisdiction for the additional reason that Plaintiff does not have standing, and that Plaintiff has failed to state a claim under Rule 12(b)(6).

## IV. CONCLUSION

In light of the foregoing the Court hereby GRANTS Defendants' [16] Partial Motion to Dismiss.  The Court dismisses Plaintiff's FOIA claim to the extent that it purports to allege a "policy or practice" under *Payne Enterprises* for failure to factually plead such a policy or practice.  The Court does not dismiss Plaintiff's FOIA claim in any other respect.  The Court dismisses Plaintiff's APA and *ultra vires* claims for lack of subject matter jurisdiction because Plaintiff has not overcome the bar of sovereign immunity.  An appropriate order accompanies this Memorandum Opinion.

                                           /s/
                                COLLEEN KOLLAR-KOTELLY
                                United States District Judge